IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT S. STESKAL,

        Plaintiff,                  Civil No. 04-6158-TC

      v.                           FINDINGS AND
                                     RECOMMENDATION

BENTON COUNTY, et al,

        Defendants.

COFFIN, Magistrate Judge.

    Defendants Benton County, Benton County Sheriff James Swinyard and Benton County Sheriff Deputy Jeff Wilcox now move for summary judgment (#60).

    Plaintiff's claims against the moving defendants arise from a traffic citation issued to plaintiff on October 29, 2003, for defective brake lights while operating his vehicle in the City of Monroe, Benton County, Oregon.

    Plaintiff's Second Amended Complaint alleges Deputy Wilcox deprived plaintiff of " ... rights, privileges and immunities secured to him by Articles 1, § I of the Oregon

1 - FINDINGS AND RECOMMENDATION

Constitution and the 1st, 5th and 14th amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983, by: Subjecting the plaintiff to a discriminatory traffic stop, oppressing and abridging plaintiff's free speech in response to plaintiff's assertion of his constitutional rights, subjecting plaintiff to a frivolous appearance in traffic court." Second Amended Complaint (#56) p. 20.

Plaintiff also alleges claims against Benton County, the Benton County Sheriff's Department[1], and Benton County Sheriff James Swinyard for "instituting policies and processes" which allegedly resulted in the violation of plaintiff's rights and for "establishing a climate and culture which encouraged and gave tacit approval to deputy Wilcox disregard of the plaintiff's civil rights." Second Amended Complaint (#56) p. 21-22.

Plaintiff third cause of action against the "City of Monroe defendants" was dismissed by Order (#106) entered January 28, 2005.

First Cause of Action: Plaintiff's First Cause of Action alleges that defendant Wilcox violated his First, Fifth and

---

[1] The "Benton County Sheriff's Department" is not subject to suit under 42 U.S.C. § 1983. See, eg. Schneider v. Elko County Sheriff's Dept., 17 F. Supp 2nd 1162 (D. Nev. 1998). Plaintiff's claims against the Sheriff's Department are construed as claims against Benton County. Even if the Benton County Sheriff's Department was a proper party to this action and subject to liability under 42 U.S.C. § 1983, the analysis and conclusions set forth herein would apply to it as well.

Fourteenth Amendment rights.[2] All of plaintiff's claims against defendant Wilcox arise from the Wilcox's issuance of a traffic citation to plaintiff on October 29, 2003 and his failure to attend a traffic court proceeding on December 4, 2003.

The relevant facts are as follows: Plaintiff was operating his vehicle in the City of Monroe, Benton County, Oregon, when he was stopped by Benton County Control Corporal Jeff Wilcox on October 29, 2003. Deputy Wilcox asked plaintiff for his driver's license, vehicle registration and proof of insurance. During routine questioning by Deputy Wilcox plaintiff advised Deputy Wilcox that he was asserting his Fifth Amendment right to not be further questioned. Deputy Wilcox ceased questioning plaintiff and issued him a citation under the provisions of ORS 816.320 for operating his vehicle without operable brake lights.

Plaintiff's citation directed him to appear in the Monroe Municipal Court. Plaintiff appeared and pled not guilty and the matter was scheduled for trial on December 4, 2003. Deputy Wilcox was unable to attend the traffic court proceeding due to department training and the citation against plaintiff was dismissed.

Deputy Wilcox's Affidavit (#63) states that he stopped plaintiff because his vehicle brake lights were not working

---

[2]Plaintiff has apparently abandoned the Fourth Amendment claim alleged in his original complaint.

3 - FINDINGS AND RECOMMENDATION

and that "Mr. Steskal admitted during our casual conversation that he had been driving the vehicle without operable brake lights."

Plaintiff's Affidavit (#126) and Response to Benton County Defendants Concise Statement of Facts (#129) state that defendant "Wilcox informed [plaintiff] that his brake lights were working." Plaintiff *implies* that his brake lights were working at the time he was stopped and argues that defendant Wilcox did not have probable cause to stop plaintiff. However, the allegations of plaintiff's complaint contradict this implication and argument.

In his complaint, plaintiff alleges: "Plaintiff stopped in front of the local convenience store at which time the Sheriff Deputy initiated a traffic stop. The Deputy, identified as Wilcox, asked Plaintiff if he would step on the brake pedal for him. Plaintiff complied, at which point the Deputy advised him that his brake lights were out. Plaintiff told Deputy Wilcox that he might have kicked the brake light switch, and then while the Deputy observed and assisted with the repair, Plaintiff fixed the defect by resetting an electrical connection under the dashboard." Second Amended Complaint (#56) p. 8.

Thus the allegations of plaintiff's complaint acknowledge that the vehicle brake lights were not working at the time he was stopped and that he subsequently "fixed the defect."

Plaintiff does not specifically deny that defendant

Wilcox informed him that his brake lights were not working at the time he was stopped. Plaintiff merely states that at some point Wilcox told him the brake lights were working. Plaintiff cannot create a genuine issue of material fact by alleging selective facts, particularly when the allegations contradict the allegations of his complaint.

I find that the undisputed facts before the court establish that plaintiff's brake lights were not working at the time he was stopped by defendant Wilcox and that plaintiff subsequently repaired the defect. Whether defendant Wilcox "told the plaintiff his brake lights were working" after plaintiff had "fixed the defect" is immaterial to the issue of probable cause for the initial stop.

The Fifth Amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself." To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled. <u>Hiibel v. Humbolt County</u>, __ U.S. __, 124 S.Ct. 2451 (2004), citing <u>United States v. Hubbell</u>, 530 U.S. 27 (2000).

Plaintiff has not alleged that he was compelled or coerced to disclose any information that he wasn't already required to provide (i.e. license and registration). Plaintiff's own allegations acknowledge that once plaintiff asserted his Fifth Amendment right defendant Wilcox ceased questioning plaintiff, except for the request for his driver's

5 - FINDINGS AND RECOMMENDATION

license and vehicle registration. Plaintiff was not compelled or coerced into testifying and there was no custodial interrogation. Plaintiff was never made a witness against himself because there was never a criminal case involved. The traffic citation was dismissed when Deputy Wilcox did not appear at the court proceeding. I find based on the undisputed facts before the court that plaintiff's Fifth Amendment claim fails as a matter of law.

Plaintiff further alleges that Deputy Wilcox "oppressed and abridge(ed) plaintiff's free speech in response to plaintiff's assertion of his constitutional rights."

In order to establish a violation of his First Amendment right to freedom of speech, plaintiff must show that the exercise of his free speech rights were a substantial or motivating factor in defendant's allegedly retaliatory actions. Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994). In this case, plaintiff alleges that defendant retaliated against him by issuing him a traffic citation, not for plaintiff's speech, but for plaintiff's *refusal to speak* after asserting his Fifth Amendment privilege. Plaintiff's argument that the issuance of the citation had a "chilling effect" on his freedom of speech is not convincing.

Plaintiff's Second Amended Complaint does not specifically allege a Fourth Amendment violation. However, the previous versions of plaintiff's complaint alleged that defendant Wilcox "unreasonably seized Plaintiff and restricted

6 - FINDINGS AND RECOMMENDATION

Plaintiff's liberty subjecting Plaintiff to a frivolous appearance in traffic court in violation of the 4th and 14th amendments to the Constitution of the United States.³"

If plaintiff intends to assert a Fourth Amendment claim based on being subjected to a "frivolous appearance in traffic court," I find that it fails as a matter of law. "Only when an officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 216 (1984) quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). I find that issuing a citation with an appearance date does not constitute a "seizure" for purposes of a Fourth Amendment violation.

The basis for plaintiff's Fourteenth Amendment claim is unclear. Plaintiff appears to argue that because he appeared at the traffic court proceeding and Deputy Wilcox did not, plaintiff's liberty interest were somehow violated without due process of law.

To establish a procedural due process claim, plaintiff must demonstrate "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) a lack of process." Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000), citing Portman v County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

---

³Plaintiff's Second Amended Complaint does allege that defendant Wilcox "subject[ed] him to a frivolous appearance in traffic court."

7 - FINDINGS AND RECOMMENDATION

Plaintiff apparently contends that he had a liberty interest in not being inconvenienced to appear in traffic court. No such interest is cognizable under the Fourteenth Amendment; at any rate, I find that plaintiff was afforded due process by the fact that the citation against him was dismissed.

Plaintiff's allegation that defendant Wilcox's conduct violated the Oregon Constitution fails to state a due process claim. See, Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982).

Plaintiff also alleges a claim for malicious and/or selective prosecution.

To establish a claim for selective prosecution, plaintiff must prove that "(i) others similarly situated generally had not been prosecuted for conduct similar to petitioner's and (ii) the Government's discriminatory selection was based on impermissible grounds such as race, religion, or exercise of First Amendment rights." Wayte v. United States, 470 U.S. 598, 605 (1985).

To prevail on a claim of malicious prosecution, plaintiff must show that defendant prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right. Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).

Plaintiff has failed to allege or establish that others in similar circumstances have not been issued traffic

citations or that his allegedly discriminatory selection for prosecution was based on an impermissible criteria. Plaintiff alleges that others of his "distinct economic class" are subject to "pretext based traffic stops, within the proximate area of the Monroe City limits." Second Amended Complaint (#56) p. 22. Plaintiff has not alleged any racial or religious motivation for defendant Wilcox's action or established retaliation for the exercise of his First Amendment rights. As discussed above, defendant Wilcox had a permissible basis and probable cause for issuing the citation.

Assuming *arguendo* that defendant Wilcox's conduct could be construed as constituting a violation of plaintiff's rights under some constitutional theory, I find that it did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Accordingly defendant Wilcox is entitled to qualified immunity from liability to plaintiff. <u>Id</u>.

<u>Second Cause of Action:</u> Plaintiff's Second Cause of Action alleges that Benton County, Benton County Sheriff James Swinyard, and members of the Benton County Sheriff's Department "set policies, processes and procedures for Sheriff's deputies including deputy Wilcox" and "were aware of, accepted and instituted defective institutional policies, processes and customs." Amended Complaint (#56) p. 21 -22.

To establish a claim against defendant Benton County,

plaintiff must establish that some official municipal policy caused the violation of his constitutional rights. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 691-694 (1978).

Plaintiff argues "(t)hat there was no policy regarding a deputy's appearance in traffic court to prosecute a citation after issuance is admitted by (defendants)." Plaintiff's Memorandum (#128) p. 29. Plaintiff's apparent argument that the lack of a policy compelling a deputy's appearance in court constitutes a actionable custom or policy of failure to train is not convincing. Nor does the lack of a written policy regarding deputy appearance in court constitute a policy of "malicious prosecution and retaliation."

Plaintiff contends: "The only established policy, practice was the one that the city of Monroe maintained explicitly stated in the 'Deputy Notice' Exhibit 15: 'PLEASE TELEPHONE OUR OFFICE AT (541) 847-5175 IF YOU ARE UNABLE TO APPEAR ON THE DATE AND TIME LISTED ABOVE. THANK YOU."

Assuming that the City of Monroe's Deputy Notice policy constitutes an official custom or policy that is somehow applicable to the moving defendants, plaintiff appears to argue that defendant Wilcox's failure to appear in traffic court was *in violation of* the policy. In order to establish municipal liability plaintiff must establish that the conduct that violated his constitutional rights was *pursuant* to a official custom or policy.

As discussed above, plaintiff's rights were not violated. Therefore, even if defendants "were aware of, accepted and instituted defective institutional policies," as alleged by plaintiff, such conduct does not give rise to a claim by plaintiff.

Plaintiff's claims against defendant Benton County and defendant Swinyard may be predicated on a theory of respondeat superior. However, it is well settled that respondeat superior is not a proper basis for liability under 42 U.S.C. § 1983; City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985); Rizzo v. Goode, 423 U.S. 362, 375-76 (1976); King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. See, Boddie v. Coughlin, 583 F. Supp. 352, 356 (S.D.N.Y. 1984); Tunnell v. Office of Public Defender, 583 F. Supp. 762, 767 (E.D. Pa. 1984); Black v. Delbello, 575 F. Supp. 28, 30 (S.D.N.Y. 1983); Knipp v. Winkle, 405 F. Supp. 782, 783 (N.D. Ohio 1974). A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or

knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984). See also, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction and the injury). Supervisory officials may also be liable if they "implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" Redman v. County of San Diego, 924 F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972 (1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in turn quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff has not established any facts that would support a claim against defendant Benton County or defendant Swinyard based on a theory of respondeat superior. Moreover, any respondeant superior claim against these defendants would necessarily derive from defendant Wilcox's conduct. As discussed above, defendant Wilcox did not violate plaintiff's constitutional rights.

I find that there are no material issues of fact remaining as to plaintiff's Second Cause of Action and that

defendants Benton County and Swinyard are entitled to judgment as a matter of law.

Pendent State Claims: To the extent that plaintiff is asserting claims under the Oregon Constitution or laws of the State of Oregon, I find that it is appropriate to refrain from exercising federal jurisdiction over those claims.

If the federal claim giving rise to the court's jurisdiction is dismissed before trial, supplemental state law claims may be dismissed as well. 28 U.S.C. § 1367(c)(3). Indeed some cases hold that the proper exercise of discretion *requires* dismissal of state law claims unless "extraordinary circumstances" justify their retention. Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1991); Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir. 1993). However, most courts hold that whether to dismiss supplemental claims is fully discretionary with the district court. Schneider v. TRW, Inc., 938 F.2d 986, 993-994 (9th Cir. 1991), weighing factors such as economy, convenience, fairness and comity. Brady v. Brown, 51 F.3d 810 (9th Cir. 1995).

There are no extraordinary circumstances that would justify the retention of plaintiff's supplemental claims (if any), and the factors of economy, convenience, fairness and comity weigh in favor of the dismissal of any such claims. I find that it is appropriate to refrain from exercising federal

jurisdiction over those claims.[4]

Based on all of the foregoing, defendants' Motion for Summary Judgment (#60) should be allowed. This action should be dismissed with prejudice.

DATED this 3 day of October, 2005.

                            Thomas M. Coffin
                            United States Magistrate Judge

---

[4] It appears from the record before the court that any such claims would be barred because plaintiff has failed to establish that he gave defendants notice of his claims as required by ORS 30.275(1). See, Brinkley v. Oregon Health Sciences Univ., 94 Or App 531, 537 (1988), citing Beaver v. Pelett, 299 Or. 664, 671 (1985).